# Case No. 8,246c.
## LENOX v. NOTREBE et al.
## HAMILTON et al. v. NOTREBE et al.
[Hempst. 251.] [1]

Superior Court, Territory of Arkansas. July, 1834.

EQUITY—BILL TO SET ASIDE DEED—HOW FRAUD ALLEGED AND PROVEN — PURCHASE BY TRUSTEE OF THE TRUST ESTATE — FRAUDULENT CONVEYANCE—CREDITORS — DOWER IN TRUST ESTATE—PROMISE TO CONVEY—RES JUDICATA—PRACTICE —EFFECT OF ANSWER AS EVIDENCE — ANSWER OF CODEFENDANT.

1. In the absence of fraud or mistake, distinctly alleged and clearly proved, a court of equity will not set aside a deed regularly executed.

2. A deed, or judgment, or decree, of twenty years' standing, may be set aside for fraud; but the fraud must be clearly alleged, and satisfactorily proved, either by positive or circumstantial testimony.

3. An equity is not subject to execution, unless by statute.

4. A trustee cannot become the purchaser of the estate or property of which he is trustee, nor can he buy an outstanding claim or title for his own benefit; and it will enure to the benefit of the cestui que trust.

5. A fraudulent conveyance is good as between the grantor and grantee, and their heirs and representatives, but is void as to creditors and purchasers.

6. Infants cannot be prejudiced by misstatements or omissions of their guardian in his answer, and equity will decree according to the facts of the case.

7. The answer of one defendant is not evidence for or against a codefendant.

8. An answer responsive to the bill is evidence against the complainant.

9. A widow is not dowable of a trust estate.

10. A promise by a purchaser after a sheriff's sale to reconvey property purchased by him is without consideration, and he cannot be required to perform the agreement.

11. Persons not parties or privies to a judgment are not bound by it.

[This was a suit by John H. Lenox, surviving administrator of William Lenox, deceased, against Frederick Notrebe and others on original bill; and Mary Ann Hamilton and Margaret Hamilton, by their guardian, against Frederick Notrebe and others, on cross-bill. A receiver was appointed in this case. Case. No. 8,246b.]

Bills in chancery.

Before JOHNSON, CROSS, and LACY, JJ.

LACY, J. The complainants filed their original bill to set aside and cancel a mortgage which they allege was executed by James Hamilton in his lifetime to Frederick Notrebe, and also to set aside and cancel a deed of sale made by said Notrebe to the legal representatives of said Hamilton; they pray all the title and interest of the property contained in said deed be vested in themselves. The bill states that Hamilton became indebted to Notrebe in the sum of about $500, for which he executed a mortgage on two slaves, Phillis and Caroline, which they have fully satisfied. It charges that all the property belonging to Hamilton was exposed to sheriff's sale in 1825, and that Notrebe became the purchaser for the sum of $220, and that he agreed that Hamilton might redeem the property one year thereafter, by his paying to Notrebe the purchase-money and interest, and also whatever else was owing by Hamilton to Notrebe. It alleges that Drusilla Hamilton during her widowhood, and Lenox since his intermarriage with her, have fully paid off and discharged Notrebe's debt. Notrebe and the heirs of Hamilton are made defendants to the original bill. Notrebe answered, and admitted generally the allegations set forth. The fund by which the payment was made, is alleged to have been a gift from Sarah Blanton to Drusilla Hamilton, for her sole benefit and use, and the remainder out of individual means of Lenox. The heirs answered by their guardian, and denied the al-

---
[1] [Reported by Samuel H. Hempstead, Esq.]

legations generally and specifically. It is stated by them, after the purchase by Notrebe of Hamilton's personal estate at sheriff's sale, it was agreed between Hamilton and Notrebe that the latter was to reconvey the property to them by Hamilton's paying whatever might be owing to Notrebe; that Hamilton in his lifetime never did pay off the debt and take a conveyance to himself, nor did he redeem the property for their benefit; that in 1826 their relative, Sarah Blanton, furnished to their mother, Drusilla Hamilton, now Drusilla Lenox, $1,100 for their sole use and benefit, and upon express conditions that Notrebe's bill of sale was to be paid off with it, and all the property therein contained conveyed to them. Accordingly the said Drusilla did pay the $1,100 to Notrebe for their use, and took a deed of conveyance, which was regularly acknowledged and recorded in 1826, conveying all the right, title, and interest to the legal representatives of James Hamilton, deceased. They afterwards filed a cross-bill against Lenox and Notrebe (his wife, Drusilla, having previously departed this life), setting forth the same material facts as contained in their answer, and prayed that the slaves be surrendered to their guardian for them, and that a decree be rendered in their favor, for the rents and profits accruing upon the estate. Lenox answered, and set forth in addition to his original bill, that the money advanced for the redemption of the mortgage and bill of sale was furnished by his wife and himself individually, and that a judgment had been rendered in the state of Mississippi against him, in favor of Sarah Blanton's administratrix, for the $1,100 furnished his wife Drusilla, to pay off Notrebe's debt, and on that judgment suit had been instituted against him in the Arkansas circuit court, and judgment obtained, for which he was then liable. He also claimed title to the same property, by a bill of sale executed by James Hamilton to Pugh, in 1825, and prior to the sale by the sheriff to Notrebe. Pugh conveyed to William Rainey in 1825, and Rainey to the complainant in 1831. It was admitted that Mrs. Lenox and her two infant children, Sarah E. and Isaac Francis, departed this life in December, 1828. Notrebe answered, and admitted the conveyance to Hamilton's heirs and representatives, and the full satisfaction of his debt. He stated the $1,100 was paid by Mrs. Blanton, for the benefit of the heirs of Hamilton, and that he made the conveyance to Hamilton's legal representatives. The proof in the cause clearly demonstrated that the $1,100 was the consideration of the deed from Notrebe to Hamilton's representatives, and was furnished by Sarah Blanton, for the sole use and benefit of the children and representatives of James Hamilton, deceased, and also that Mrs. Hamilton herself manifested some displeasure at the conveyance not having been made to the children. The object of the ad-

vancement, as shown by the testimony, was to vest in the children all right and title to the property.

The pleadings in this cause present considerable confusion and some contradiction. The parties seem to have changed their ground in their complaint and defence, and herein the court have found no little embarrassment in examining the record. The questions presented are numerous and highly important, and we have given to them a careful consideration. In their investigation, the court have derived much assistance from the highly satisfactory arguments of all the counsel concerned. The complainants' bill is mainly a claim to set aside a deed or bill of sale, regularly executed and recorded, and to vest title in themselves, without charging expressly that the conveyance was made through mistake or fraud. It is difficult for the court to conceive by what means they propose to effect their object. It is not pretended that Notrebe, in conveying the property to Hamilton's representatives, acted fraudulently. The proof shows that he was governed by the most scrupulous honor, that his object was to protect the rights of the children, without prejudicing the interest of creditors. And hence, though he knew that it was the wish and intention of Mrs. Blanton and Mrs. Hamilton to convey the property to the children by name, he chose to employ descriptive terms in the conveyance, for fear they might by possibility be injured. Was it by mistake that the term "legal representatives" was used in the conveyance? Certainly not; for he had a full knowledge of all the facts, and even incurred the expense and trouble of consulting counsel upon the subject. It is contended that the conveyance was improperly made. In what way? The court is not aware that a deed or bill of sale can be impeached, except for mistake or fraud. The defendants claim the property as the legal representatives of Hamilton, and they show a deed or bill of sale, regularly executed and recorded, to protect their title. Even where fraud is alleged to set aside a deed, it must be satisfactorily proven, either by positive or circumstantial testimony. This doctrine is so fully and ably examined in the leading case of Hildreth v. Sands, 2 Johns. Ch. 36–56, by Chancellor Kent, and the authorities there cited are so numerous and conclusive, that it is deemed unnecessary to refer to others.

A deed, or even a judgment, or a decree of a court of chancery of twenty years' standing, can all be set aside on the ground of fraud; but then it must be clearly alleged in the bill, and supported by proof. In this case there is no charge of fraud, nor is there any attempt to prove it. The defendants are clothed with the legal title, and until that title is destroyed by a superior equity, they are the rightful owners of the estate. It is not denied but what they are the legal representatives of Hamilton, and if so,

all the right, title, and interest of the estate attached immediately to them, on the execution of Notrebe's bill of sale. It is contended that the purchase by Notrebe, at the sheriff's sale, conveyed no more than an equitable interest, and that the mortgagee held the property subject to redemption. An equity is not subject to execution, unless by some particular statute. This principle is too familiar and salutary to require argument or authority to sustain it. Hamilton's legal estate was sold by the sheriff, and Notrebe became the purchaser; and that estate, whatever it may be, the defendants are in law and equity entitled to. It is difficult to conceive how it can be considered a mortgage, when the complainant does not charge in his bill that it was one, though the defendants treat it in the character of a mortgage in their answer. It was, to all intents and purposes, a legal sale, and a legal title was conveyed. And if there was a latent equity, constituting it a mortgage, even a court of chancery would never consider it so, unless for beneficial purposes. This sale was good against Hamilton and his heirs, and the agreement of Notrebe afterwards to reconvey did not change its character, though it might have incumbered it with conditions. Both the complainant and the defendants claim through the purchase of Notrebe, and it is good against them both and all the world. It can be impeached only on the ground of fraud or mistake by creditors or purchasers. Is the present complainant a creditor or purchaser? Can a court of equity view him in that light? When did Hamilton's estate become indebted to him, or at what time did he constitute himself creditor or purchaser? The property remaining in Hamilton's possession, or coming to him, could not make him the one or the other. It might and did constitute him a trustee. 1 Atk. 489. A trustee cannot acquire any advantage by possession of property, but holds it for the benefit of his cestui que trust. 2 Johns. Ch. 30; 1 Dow. 269; 1 Ch. Cas. 191; 1 Ball & B. 46, 47; 2 Johns. Ch. 269. It is a settled principle, that a trustee can gain no benefit by any acts done by him as trustee, but that it shall accrue to him for whom he holds. He is not permitted to become a purchaser of part or the whole of the estate, for which he is trustee for a valuable consideration. Lord Hardwicke determined that a trustee could not buy at a sale by auction, and Lord Eldon has followed that decision. The reason is apparent. So jealous is the court of a trustee's taking advantage of his situation to benefit himself, that he could not even purchase property which the owner refused to sell to the cestui que trust. So a trustee who purchases a mortgage or judgment which was a lien upon the trust estate, is not allowed to turn such purchase to his own advantage. 1 Madd. 90–93; 1 Johns. Ch. 27; 2 Johns. Ch. 252. In 2 Caines' Cas. 183, it

is decided that a trustee cannot purchase an outstanding claim or title for his own benefit. If this doctrine be true, and of that there can be no doubt, then what sort of title did Lenox acquire, when holding the property for Hamilton's children, by this purchase from Rainey? If the purchase from Rainey was fair and for a valuable consideration, it could not avail the complainant any thing, for he was holding as trustee for the defendants, and hence he could take nothing by his purchase, and it would enure to their benefit. How much stronger is the case against him when he comes into equity and sets up a title which, by his own showing, is fraudulent on its face, and that, too, to defeat the rights of infants, acquired for a valuable consideration. Besides, this fraudulent deed or bill of sale was executed long after the suit was commenced, and even after the filing of the cross-bill, and for the avowed and express purpose of defeating a legal and equitable title.

The defendants claim as purchasers for a valuable consideration, which is proved to have been advanced and paid to Notrebe in discharge of his demand against their ancestor, and this title is attempted to be disturbed and overthrown by a voluntary conveyance, fraudulently entered into, to defeat the rights of innocent purchasers or creditors. The rule of law, that a fraudulent conveyance between the grantor and grantee is obligatory upon himself and his heirs, so far from prejudicing the right of the infants before the court, will shield and protect them. They are purchasers, and claim the estate as such, and do not derive title by descent. The conveyance of Rainey to Lenox. as to them, is fraudulent and void. But it is said that Notrebe and the defendants treated the sheriff's sale as a mortgage in their cross-bill and answer, and it being such will enable the complainant, in right of himself and his wife, to take the estate. The bill nowhere charges the sheriff's sale, in express terms, to be a mortgage. It is true it often has reference to a mortgage, but when that is the case, it is confined to the mortgage of the two slaves, Phillis and Caroline. Infants cannot be prejudiced by the misstatements or omissions of their guardian in his answer. Hence a court of chancery will decree according to the facts of the case. 3 Johns. Ch. 367. The answer of one defendant cannot be evidence for or against a co-defendant. [Clark v. Van Riemsdyk] 9 Cranch [13 U. S.] 153; [Leeds v. Marine Ins. Co. of Alexandria] 2 Wheat. [15 U. S.] 380. In this instance, the original answer of Notrebe responds in general terms affirmatively to the complainant's bill. The defendants, not deeming it satisfactory and complete, asked in their cross-bill for a full disclosure of all the facts, and hence his answer may be considered an amended answer to the complainant's original bill, and although it

is not evidence against his codefendant, is nevertheless evidence against the complainant. Field v. Holland, 6 Cranch [10 U. S.] 8; 2 P. Wms. 453. Notrebe's answer confirms the other testimony in the cause, which is abundant without it, and therefore there can be no doubt that the fund that redeemed the property sold at the sheriff's sale was advanced upon the express condition that it was to be conveyed to the children of Hamilton, and the deed shows upon its face by whom and for what purposes it was so advanced. If the property was held as collateral security subject to redemption, before Lenox and wife could ask a conveyance, they would have to show that they had actually paid the incumbrance. The solvency or insolvency of the estate can make no difference, for the view here presented considers the infants as purchasers, and the complainant and wife claiming as representatives of the estate. Besides, the deed from Notrebe to the children was procured through the agency of Mrs. Hamilton, and she entirely approved of its contents. Whatever right she had or possessed before that time was, by that conveyance, relinquished and given up to her children, and her husband, who claims through her, can in no possible event derive title. The widow cannot be endowed of a trust estate. 1 Har. Ch. 7, 22. The property remaining with Hamilton during his lifetime, and with her afterwards, and coming finally into the possession of Lenox, did not at all change the nature of Notrebe's purchase. He was the legal owner, and no one could possibly have any title to it, except in equity. As the case stands, Notrebe could not have probably been compelled by any one to have reconveyed, for his promise was made after the sale and without consideration; and above all, there can be no pretence that he could be compelled to convey to Lenox and wife. If creditors have lain dormant and lost their rights, or can even yet assert them, that cannot be any reason why those should be preferred who have no shadow or pretext of right in their favor. The estate vested in the defendants is both a legal and an equitable one, so far as the complainants are concerned; and they will not be permitted to disturb it without showing right or title in themselves. It is no answer to say that a judgment is rendered against Lenox by the administratrix of Sarah Blanton, deceased, which remains yet unsatisfied and enjoined by the complainants. That record could not be evidence in any point of view against the defendants, for they were neither privy nor parties to it (1 Starkie, Ev. 217); but if it even could be, still it would weigh nothing against the mass of testimony in the cause. Though the judgment and the purchase by Lenox of Rainey,

after the filing of the cross-bill, throw a dark and dishonoring shade over the whole of this transaction, and demonstrate its true nature and complexion, yet the court will forbear, and not indulge in expressions of harshness and severity which might be called for, and would be justified on this occasion,—requiescat mortuum manes in pace.

Every aspect in which the court is capable of viewing or considering this subject, constrains them to believe that both the law and equity of the case are with the defendants. It will, therefore, be decreed, that the original bill be dismissed with costs, and the prayer of the cross-bill granted. Decreed accordingly.